Hugh G. GRADY, Administrator of the Estate of Marsha Robbins, Deceased, Plaintiffs,

v.

KENNY ROSS CHEVROLET CO., a corporation and H. Auth, t/a Auth American Service, Defendants and Third-Party Plaintiffs,

v.

Rose KARANZAS, Administratrix of the Estate of Donald Karanzas, Deceased, Third-Party Defendant.

Civ. A. No. 68–305.

United States District Court, W. D. Pennsylvania.

Oct. 13, 1971.

William G. Boyle, of Meyer, Unkovic & Scott, Pittsburgh, Pa., for plaintiffs.

Henry E. Rea, Jr., of Brandt, McManus, Brandt & Malone, Brueck, Walker & Brueck, Meyer, Darrash, Buckler, Bebenek &·Eck, Pittsburgh, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

We are asked to grant a new trial following a jury verdict for defendant, the seller of a used car which became the subject of this controversy. The car, a 1963 Chevrolet was sold to one Donald Karanzas of Pittsburgh, on or about March 19, 1966. He used it for about a year in driving to work in the Pittsburgh vicinity and for other purposes. On March 11, 1967, Donald Karanzas and Marsha Robbins went out for the evening and apparently at the end of the date sat together in the Chevrolet in front of the Robbins' home talking while the motor continued to run. The next morning they were found dead in the car from monoxide poisoning.

An investigation showed that the car had been sold to Kenny Ross Chevrolet by one Ronald Groves some time prior to February 23, 1966. It was the contention of plaintiff, the administrator of the estate of Marsha Robbins, that Groves had caused to have installed a new muffler and tail pipe on the car prior to February 23, 1966, by a service station, that the equipment was improperly installed and in a defective condition because the tail pipe pointed at the inside of the left rear fender instead of toward the ground or toward the space below the fender. Plaintiff contended that the defect was present when Kenny Ross bought the car and continued to exist when Kenny Ross sold the car to Donald Karanzas. Kenny Ross was sued on the theory of strict liability, it being contended that the car was in a defective condition when sold and did reach the user (Marsha Robbins) without change in its condition.

Plaintiff introduced the testimony of Groves to the effect that he had caused the muffler and tail pipe to be installed at a service station and the tail pipe did point to the inside of the left rear fender assembly to some extent because he remembered that he was worried that the paint on the outside of the fender might blister.

Plaintiff then called an expert, Wilbur Messmer, who examined the car on May 22 or 23, 1967 when the tail pipe, it was contended, was in the same position and who gave the opinion that the tail pipe was improperly installed and had been in that condition for some time and that the fumes and water coming from the pipe had eaten a hole in the fender assembly which was hollow and which connected to the trunk. He said the fumes found their way into the trunk and thence into the car. He said the end of the tail pipe pointed a little more toward the fender than it should have because a portion of the pipe did not fit snugly into the channel in the frame where it was intended to fit. The difference between the improper position of the tail pipe and a proper position (where it would miss the fender) was slight, perhaps as slight as a couple of inches.

Plaintiff's theory was that Kenny Ross never corrected the defect, sold the car in the condition described and should be held on the theory of strict liability as heretofore explained.

(Plaintiff had also sued Auth American Service, who had regularly inspected the car, on the theory that Auth negligently failed to discover the defect. Auth bought a joint tort-feasors release before trial. Auth had brought on the record Donald Karanzas as third party defendant. Auth and Karanzas were let out during the trial and the claim of plaintiff against Kenny Ross alone went to the jury on strict liability.)

Defendant Kenny Ross did not introduce any testimony whatever. Instead defense counsel argued to the jury that the crucial date was March 19, 1966, the date the car was sold to Karanzas, because it was almost a year until the accident took place and that no ·one

could say with certainty that the position of the pipe found by Messmer was the same as the position of the pipe when the car left Ross' hands. He argued that a car in daily use in Pittsburgh was subjected to much vibration, that Messmer had found the pipe loose so that it could be rotated in the channel, not frozen in place, and that it was only reasonable to conclude that in over a year's driving the loose pipe had changed position. Therefore, he argued, the product did not reach Marsha Robbins, the user, without substantial change. He also argued that the car had passed state inspection in the hands of Groves and had twice passed inspection while owned by Karanzas so that it was possible to assume that the tail pipe assembly had been in proper condition not only when the car reached Kenny Ross but when Kenny Ross sold it to Karanzas since inspection stations are required to check this part of a car and correct defective mufflers and tail pipes.

His argument must have been successful. The jury was asked to decide liability first. They found in favor of Kenny Ross on the issue of liability.

■ In plaintiff's motion for new trial there are only three reasons argued. It is first argued that it was improper for defense counsel to cross examine the expert Messmer concerning whether he was familiar with state inspections, whether they were required at stated intervals and whether state inspectors were required to check tail pipes and mufflers and whether the alleged defects were in violation of state safety regulations. Plaintiff argues that it was also improper for defense counsel to have made the argument that state inspections had apparently not revealed the defect.

■ We find nothing improper in either the cross-examination or the argument. Although the record has not been transcribed our notes reveal that there was no objection to either the cross examination or the argument. It

is fundamental that error cannot be assigned in admitting testimony to which there was no objection.

Further, Groves, without objection, had been cross-examined about the inspections of the car which had taken place while he owned it. In fact he had explained that he had caused the replacement of the equipment because he thought his car would not pass inspection otherwise; that the attendant at an Ashland Oil Service Station had told him to have this done when the pipe was found to have holes in it. Groves had discussed inspections thoroughly.

Of course Auth had been sued on the basis that Auth had negligently missed the defect on inspection and although Auth had settled for a joint tort-feasor's release Auth participated in the trial.

Rose Karanzas, witness for plaintiff and sister of Donald had also testified (without objection by plaintiff) on cross examination that her brother Donald had taken the car to the Auth station for inspection on two occasions. She had answered many questions about the inspection of the car.

The expert Messmer was offered as an expert mechanic and it was natural to ask him, as an expert, if inspectors were required to look for such defects and finally, in our view, automobiles are so universally used and so customarily taken to inspection stations in Pennsylvania that the jury would have known of the practice in any event and could not have been prejudiced by the revelation of the obvious. Neither could they have been prejudiced by an argument inherent in the facts.

■ The next error assigned is that Kenny Ross elected not to call his expert witness and the Court refused to charge the jury that it could draw an adverse inference from the refusal. The point for charge was as follows:

"Where a party fails to call a witness who is in the control of the party whose interest it would naturally be to produce him and without satisfactory explanation fails to do so, the

jury may draw an inference that his testimony would be unfavorable."

(The pertinent rule of law as set forth in Abrams v. Crown, 178 Pa.Super. 407, 116 A.2d 331 (1955) is that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, an inference may be drawn that the evidence if produced would be unfavorable to him.)

We refused this point because it did not apply under the circumstances. The defendants' expert was retained only to express an expert opinion. He knew nothing of the facts and had been retained only to try to counter another expert. As defendant argues, Messmer's opinion on the stand differed to some slight degree from the report which counsel for plaintiff had attached to his pretrial report. That fact is not material here. Both experts found defects but the issue in the case was not the absence of defects but whether the defects continued over the period of the year during which the car was driven. It would have been error to have affirmed the point when defendant had introduced no testimony whatever of a lack of defect.[1]

■ Finally, we are asked to grant a new trial in the exercise of our discretion. It is contended that the verdict was against the weight of evidence. The jury has decided the case in a fair trial. We have been told repeatedly that we should not interfere when the jury has spoken after proper deliberation, see Moore's Federal Practice, 6A, ¶ 59.-08[5] and the cases cited thereunder. We find no reason to override the verdict. We were not shocked at the outcome recognizing that the theory of strict liability is often difficult for a jury to translate into fact.

---

1. Messmer's pretrial opinion said he had been retained to examine the exhaust system for leaks. He found the tail pipe to be loose at the connection where it slid onto the muffler. The tail pipe had revolved in a clockwise position aligning itself with a hole in the fender. The defendants' expert had agreed that the connection between the muffler and the tail pipe was loose and fumes were escaping from that connection.

When, just before trial, defendants were told that Messmer would say that the trouble was improper installation by the Ashland service station they pleaded surprise and insisted on a continuance. We gave them only enough time to try to determine if the Ashland service station had ever made such an installation. They reported they were unable to determine this question and we proceeded to trial ruling that we would permit Messmer to say that the installation was improper.

It might be noted that defendants' expert according to his pretrial report also found holes in the exhaust pipe, deterioration of the muffler, leaks, improper installation and other defects. He agreed in part with Messmer but found many other things wrong with the assembly. The issue in the case was not whether defects existed in the so-called assembly but whether there was substantial change between sale and use which nullified the theory of strict liability. Defendant, in other words, admitted the defect.