Wesley HAWKINS, Appellant,

v.

LARRANCE TANK CORPORATION, Appellee.

No. 47839.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 6, 1976.

Rehearing Denied Feb. 17, 1976.

Certiorari Denied Oct. 5, 1976.

Released for Publication by Order of Court of Appeals Oct. 7, 1976.

Lampkin, Wolfe, Burger, Abel, Mc-Caffrey & Norman by Ed Abel, Oklahoma City, for appellant.

Nicklas, Parrish, Saenz & Wade by T. Dale Nicklas, Lawton, for appellee.

BOX, Judge:

An appeal by Wesley Hawkins, plaintiff in the trial court, from a summary judgment entered in favor of Larrance Tank Corporation, appellee.

A workman was injured when the fire escape upon which he was standing broke loose from the building and plummeted to the ground. He brought this action against the manufacturer of the fire escape alleging a cause of action in negligence and breach of warranty. The trial court entered summary judgment in favor of the manufacturer and the workman appealed. The question is whether the manufacturer discharged the burden of showing that it was entitled to summary judgment. We hold that it did not.

The only supporting material used in the summary judgment proceeding was the deposition testimony of several witnesses, which we summarize below.

In 1968, because of recent changes in the local building code, it became necessary for the Southwestern Hospital to install a fire escape in the North side of the hospital building. The task of obtaining the fire escape fell upon Harold Christman, the hospital's chief engineer. Christman contacted Max Tague, and employee of Larrance Tank Corporation (Larrance). Tague was in charge of drafting plans and preparing estimates for Larrance.

According to Tague's tesimony, Christman and Tague discussed in considerable detail alternative methods of installing and supporting the fire escape. Tague first proposed the use of two or four poles to support the fire escape; but Christman objected. He was concerned that the poles would interfere with the traffic in an adjacent alley. Tague then suggested attaching the platform of the fire escape to the building by the use of through-bolts. Christman rejected this proposal also. He was concerned that through-bolts, since they would run completely through the hospital wall, would be unsightly and proposed instead the use of one-half inch expansion bolts. Tague was unsure whether expansion bolts by themselves would be sufficient to hold up the fire escape platform. He told Christman that it would depend upon the make-up of the hospital wall and apparently asked Christman what kind of material the wall was composed of. Christman did not know the answer to this question and it is not clear from the testimony whether the two ever agreed that expansion bolts would be suitable for the job. Tague testified that he warned Christman to inspect the wall before installing the fire escape and that he never indicated that the expansion bolt method would suffice. Christman could only remember that the two had had a "meeting of the minds" on the matter. It is clear, however, that

Tague prepared a plan for constructing and installing the fire escape which called for the use of one-half inch expansion bolts.

Once this plan had been approved by the hospital, Larrance fabricated the fire escape and delivered it to Christman. The fire escape was then installed by Christman's staff in accordance with the plans supplied by Larrance. Under their agreement Larrance was to furnish the one-half inch long bolts specified in the plans and, according to Christman, four such bolts were in fact supplied and used in the installation.

The accident occurred on February 21, 1972—more than three years after the fire escape was installed. Prior to this time the fire escape had been used occasionally with no indication of danger. Appellant (Hawkins) and another workman employed by the hospital, was standing on the platform and working on the outside of the building when the platform suddenly broke from the wall and fell to the ground. Hawkins sustained serious injuries.

Christman, who did not witness the accident, and Ames, the other workman on the platform, both testified that they examined the fire escape shortly after the accident. This examination disclosed that two or three of the four bolts used to fasten the platform to the hospital were broken and that at least one bolt had been pulled from the wall. Christman surmised that three bolts holding the platform broke and that the remaining bolt was consequently jerked out of the wall as the platform broke away.

The substance of Hawkins' suit is that the bolts supplied by Larrance were defective. Larrance apparently does not deny that it furnished the bolts to install the fire escape, though there is a conflict in the testimony concerning the location of the bolts and the exact size of the bolts used. In defense of its summary judgment it contends: (1) Hawkins failed to produce "evidence" in opposition to the motion that the bolts were defective at the time they left the hands of Larrance; and (2) uncontroverted facts demonstrate as a matter of law that Larrance is not liable even if the bolts used were defective.

I.

As Larrance notes, in *Kirkland v. General Motors Corporation,* Okl., 521 P.2d 1353, the Supreme Court held that an essential element of a plaintiff's cause of action in a manufacturer's product liability case is proof that the defect existed in the article at the time it left the vendor's possession and control. To avoid a directed verdict then, a plaintiff must marshal enough evidence to permit the inference that more probably than not the product was defective when it was sold. But less is required to avoid summary judgment; plaintiff need only show that the evidence presented in the motion is subject to conflicting interpretations of such nature that reasonable men might differ as to its significance. *Poafpybitty v. Skelly Oil Co.,* 517 P.2d 432 (Okl.); *Runyon v. Reid,* 510 P.2d 943 (Okl.); *Smith v. American Flyers, Inc.,* 540 P.2d 1212 (Okl.App.). We think the latter burden has been met in the case at bar.

The evidence that the bolts were probably not defective when the left the possession and control of Larrance is formidable but not compelling. First, there is the three year lapse of time between the sale of the bolts and the accident. This is no doubt a damaging fact—one which frequently prevents any inference that the product was defective when sold. See e. g., Prosser, Law of Torts (1971) § 103: Restatement of Torts 2d § 402A, Comment 9 (1965). Yet it does not preclude a finding of defectiveness at the time of sale. *Dunham v. Daughan & Bushness Mfg. Co.,* 42 Ill.2d 339, 247 N.E.2d 401; *Rosenau v. New Brunswick,* 51 N.J. 130, 238 A.2d 169. See also Hursh and Bailey, American Law of Products Liability 2d (1974) § 4:16,

Annot., 54 ALR3d 1079 (1973). We think that an important, though often unarticulated, concern is whether the product is of such a nature that its failure could easily be attributed to post-sale use. Some products are more likely to wear out by use than others and when the product is such that its failure could be the result of use during the period after sale, lapse of time and use tend strongly to establish that the defect was not present when the product left the vendor's hands. See e. g. *Grady v. Kenny Ross Chevrolet Co.*, D.C.Pa., 332 F.Supp. 689; *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 517 P.2d 406 (Colo.App.); *Kleve v. General Motors Corp.*, 210 N.W.2d 568 (Iowa).

In the instant case the products alleged to be defective are expansion bolts designed for continual support of a fire escape. We think it obvious that their failure could not easily be attributed to normal use during the three year period. Accordingly, we conclude the long period of time since the sale is itself not a compelling factor in defendant's favor and reasonable men could nevertheless infer that the bolts were defective when they were delivered by Larrance to the hospital.

There is also the possibility that the alleged failure of the bolts was the result not of a defect existing at the time of sale but rather the outcome of improper installation. Thus Larrance states in its brief "There was no testimony as to how the installation was accomplished, what tools were used, whether the holes for the bolts were drilled properly, whether they were drilled into mortar or brick, how tight the bolts were anchored and so forth." This is no doubt true, but it is likewise true that the only evidence presented in the summary judgment motion pertaining to the installation is the deposition testimony of Harold Christman to the effect that the installation was proper and error free. Based on Christman's testimony we think that reasonable men could reach differing conclusions as to whether the bolts were defective when they left the hands of the vendor, Larrance.

## II.

Larrance urges that even if the bolts were proved defective it is not liable because they were "combined with the brick and mortar wall of the hospital in spite of the appellee's warning to Christman that they might not be sufficient depending on the structure of the wall and the type of brick and mortar used in it." We are not convinced that such a warning was given but even if it was, we find no merit to this argument. The basis of their contention is that by using the bolts in a wall which might not be capable of holding the bolts firmly in place, the hospital had made an "abnormal use" of the product which precludes Hawkins from recovering. We cannot perceive how the hospital's conduct— to the extent that it could possibly amount to a use of the bolts for some purpose for which they were not intended—could be imputed to Hawkins so as to bar his recovery. Hawkins brought suit because of an injury to him personally, not because of an injury to the hospital and there is no evidence that *he* misused the product or voluntarily assumed the risk of a known defect. See generally *Kirkland v. General Motors Corp.*, supra, at page 1366.

A more plausible defense based upon this line of argument is that the accident was caused not by its selling of a defectively manufactured or designed product but to the hospital's use of the bolts in such a way that undue stress could be brought upon them and result in their failure. But the testimony with respect to this point is conflicting and susceptible to differing conclusions.

Larrance additionally contends that since it was merely building the fire escape according to another's specifications

it cannot be responsible for the safety of the finished product. We find no merit in this argument either. If Larrance furnished the hospital defective bolts and by reason thereof Hawkins was injured, it is liable for his damages. We think, based on the facts in the record, that reasonable men could reach different conclusions as to whether the bolts supplied by Larrance were defective and accordingly we cannot affirm the judgment below on this ground either.

We reverse the judgment of the trial court and remand with directions for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

REYNOLDS, P. J., and ROMANG, J., concur.