Paul S. BARBER, an Individual, Plaintiff-Appellant,

v.

GENERAL ELECTRIC COMPANY, a New York Corporation, Defendant-Appellee.

WESTERN FARMERS ELECTRIC COOPERATIVE, an Oklahoma Corporation,

and

Employers Casualty Corporation, an Oklahoma Corporation, Intervenor.

Nos. 79–1918, 79–1926.

United States Court of Appeals, Tenth Circuit.

Submitted March 19, 1981.

Decided May 11, 1981.

Robert S. Baker and John S. Oldfield, Jr., Baker, Baker & Wilson, Oklahoma City, Okl., for plaintiff-appellant.

B. J. Cooper, Cooper, Stewart & Elder, Oklahoma City, Okl., for defendant-appellee.

Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question which is here presented is whether the trial court erred in granting defendant's motion for summary judgment in a personal injury case which grew out of a high voltage transformer explosion in the course of its being installed.

The occurrence took place on May 27, 1976. The transformer was being installed by the plaintiff Barber and other employees of Western Farmers Electric Cooperative at a Western Farmers sub-station. General Electric had manufactured the transformer at Rome, Georgia and had shipped it to Anadarko, Oklahoma by rail in 1974. Western had stored it for two years. It had been moved to the installation site in May of 1976. During installation there was a malfunction. This caused pressure to build up inside the transformer. A further result was the expulsion of insulating oil through a pop-off valve. There was a protective system which would have caused fuses to blow and turn the circuit off, but it failed to function. Just prior to the explosion Barber had been standing under the pop-off valve, and was covered with the expelling oil. He claims that he was blinded by the oil and while he ran from the vicinity of the expelling oil, he fell and seriously injured himself. Barber's cause of action was based on two theories of strict liability in tort, namely manufacturer's product liability and breach of implied warranty of merchantable quality—fitness for its intended use.

General Electric sued Western Farmers Electric Cooperative as a third-party defendant. Employers Casualty Corporation, the Workmen's Compensation carrier, intervened. It alleged a subrogation interest as against General Electric. It also realleged plaintiff Barber's theories of recovery.

The trial court entered summary judgment in favor of General Electric and against plaintiff Barber.

## I. *The Order of Dismissal*

On July 23, 1979 the plaintiff filed a motion for entry of a voluntary non-suit or dismissal without prejudice—pursuant to Rule 41(a)(2) of the Rules of Civil Procedure. This was granted. But the following day the court held a hearing to consider General Electric's motion to vacate the motion to dismiss and at the same time to grant defendant's motion for summary judgment. The trial court granted both of these motions. Judgment for the defendant was entered, and it is the propriety of this ruling which is the subject of appeal.

The surrounding facts insofar as they appear in the record are as follows:

Barber filed his complaint on December 1, 1977. General Electric filed its answer on December 22, 1977. Plaintiff then served interrogatories on General Electric on March 7, 1978. General Electric served plaintiff with interrogatories on March 8, 1978. Employers Casualty filed a motion to intervene on March 17, 1978. Both sets of interrogatories were answered. On June 6, 1978, the court entered a protective order having to do with documents and materials produced by the defendant for plaintiff's use. General Electric produced some 25 documents for plaintiff's use.

General Electric filed a third-party complaint against Western Farmers on June 20, 1978. A jury trial was requested. The third-party defendant, Western Farmers, filed an answer to the General Electric complaint on July 10, 1978. Pretrial proceedings were held during October and November, 1978. General Electric served Western Farmers with interrogatories in December, 1978, and served Western Farmers with a request for production of documents, etc. on January 8, 1979. Other motions were filed by Western Farmers, until on January 23, 1979, General Electric filed its motion for summary judgment against plaintiff Barber.

There were further pretrial proceedings on February 20, 1979. Plaintiff filed a brief in answer to that of General Electric. This was in opposition to General Electric's brief in support of summary judgment motion. It was on July 23, 1979 that plaintiff sought to dismiss the complaint without prejudice. No notice of the request was

given to General Electric or Western Farmers or to any other party. The trial court granted the plaintiff's motion on July 23, 1979. General Electric orally moved to vacate that motion on July 24, 1979, after it received notice of the judgment. Following a hearing the court set aside the plaintiff's motion for dismissal and granted the motion of General Electric for summary judgment. The motion of Western Farmers for summary judgment was held in abeyance pending the appeal of the grant of summary judgment in favor of General Electric.

Under Rule 41(a)(1) an action may be dismissed by the plaintiff up to the time of filing of an answer or a motion for summary judgment. After that time, the court has discretion to order dismissal under Rule 41(b). Also, under Rule 60(b) the court has the power to set aside its judgment for one of several reasons. In the face of extensive discovery it would be an abuse of discretion to grant a voluntary dismissal such as the plaintiff filed. We do not perceive any abuse of discretion in the vacating of the voluntary dismissal. Nor do we see any loss of jurisdiction.

When a motion to dismiss without prejudice is considered, the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties. 5 Moore's Federal Practice (1979), p. 41–59. General Electric was not given an opportunity to be heard. It was entitled to be heard when it moved to vacate the order of dismissal. The trial court acted within its discretion in holding that it would be unjust to uphold its previous judgment, especially in view of the extensive preparation and expense in connection therewith. *See, e. g., Gulf Italia Company v. American Export Lines*, 263 F.2d 135 (10th Cir. 1958), *cert. denied* 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254.

II. *Propriety of The Granting of Summary Judgment*

Plaintiff contends that Western Farmers justifiably relied on General Electric's ability to warrant the integrity of the system which was contained in that part of the transformer which was designed, manufactured and sealed in their Rome, Georgia plant. His additional allegation is that Western Farmers relied on a statement in General Electric's Transformer Instruction Manual which stated that "transformers are normally shipped completely assembled, liquid filled and ready to install." Also contended is that the transformer was not "ready to install" or "completely assembled," and that the fire was caused by a defective terminal board, loose or unconnected wires into the terminal board, or a combination of both.

The position of General Electric is that the terminal board was not faulty and that any loose connections into the terminal board occurred after the transformer arrived at Anadarko, Oklahoma. General Electric points to the fact that the transformer was under Western Farmers' control for two years prior to the accident; that the transformer was inspected by Western Farmers at the time it was delivered to Anadarko and nothing was found wrong at that time; that employees of Western Farmers inspected it again prior to its being moved to the installation site; that Western Farmers employees admit that they did not inspect the terminal board connectors on the main tank compartment side of the transformer (where the explosion occurred), although this inspection was recommended by General Electric in its Installation and Maintenance Instruction Manual.

Another point which is advanced by General Electric is that the main tank compartment of the transformer had not been "sealed" by General Electric, since the manual specifically recommended inspection, and the term "sealed" is defined (in Black's Law Dictionary) as "fastened ... so as to be closed against inspection." Barber responds to this by saying that after General Electric filled the compartment with insulating oil, the top of the compartment was "sealed" by means of a plate that was belted down and was "air tight" according to General Electric publications.

■ General Electric emphasizes that plaintiff has not come forward with any evidence which shows that any defect was present in the transformer when it left General Electric's hands in 1974. There are simple answers to this assertion. One is that circumstantial evidence is present in the substantial discovery. The other answer is that the summary judgment motion was presented in the midst of the discovery stage of the case.

■ The legal standards applicable to this products liability case are to be found in *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okl.1974), as follows:

1. It must be shown that the product was the cause of the injury;

2. It must be shown that the defect existed in the product at the time it left the manufacturer;

3. It must be shown that the defect rendered the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with ordinary knowledge common to the community as to its characteristics.

General Electric maintains that Barber has failed to present any evidence which has established all of the above listed elements. It argues that there is no evidence that the defect existed at the time that it left General Electric. General Electric also argues that an ordinary utility customer would not disregard proper installation instructions by the manufacturer, and that a high voltage transformer could not be dangerous beyond that which would be contemplated by an "ordinary utility customer."

■ Barber lists some fifteen factual disputes which prevent the grant of a summary judgment. Barber also argues that General Electric viewed and repaired the burned transformer, and after doing so it destroyed the burned parts; that these are the parts which are important evidence. Barber admits that no evidence exists that General Electric intentionally destroyed the internal parts of the transformer in order to cover up evidence. Barber does not accuse General Electric of any wrongdoing. He does maintain that even though the act of General Electric was innocent it would be unfair to prevent him from presenting his case because he is unable to produce any pieces of the transformer which has been destroyed.[1]

Some fourteen depositions were taken in the case. Most of these were on behalf of General Electric. The General Electric dep-

---

1. The ultimate issue is the sufficiency or lack thereof of evidentiary proof of the factors enumerated in *Kirkland, supra*, which Barber must present in order to avoid summary judgment in favor of General Electric. This court has held that for summary judgment to lie, " '[t]he movant must demonstrate entitlement [to a summary judgment] beyond a reasonable doubt and if an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate.' " *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980), quoting from *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1976); *Webb v. Allstate Ins. Co.*, 536 F.2d 336, 340 (10th Cir. 1976). The court must construe the evidence, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bruce v. Martin Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976). Summary judgment is not to be granted unless the evidence is clear to the point that there is no genuine factual issue upon which reasonable minds might differ. *Williams v. Borden, supra*. This standard differs from the standard for a directed verdict. To avoid a directed verdict in a products liability case in Oklahoma, a plaintiff must present enough evidence to permit the inference that more probably than not the product was defective when sold. *See, e. g., Hawkins v. Larrance Tank Corp.*, 555 P.2d 91 (Okl.App.1976), *cert. denied* 1976. To avoid summary judgment in a product liability case, however, the party opposing it need only show that the evidence regarding whether the product was deficient when sold is subject to conflicting interpretations of such nature that reasonable men might differ as to its significance. *Id.* The courts recognize that summary judgment is a drastic remedy which is to be granted with caution so as to insure that litigants will have a trial on bona fide factual disputes. *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1 (10th Cir. 1970). The foregoing are the governing standards in the summary judgment evaluation.

ositions focused on the fact that Western Farmers did not follow the inspection procedures which had been recommended in its manual. Also emphasized is that since the accident Western Farmers has instructed their employees to follow the manual. The facts adduced in depositions show that at the time of the accident Western Farmers employees did not open the sealed compartment in the main tank, drain the compartment of several hundred gallons of oil, and check the terminal board connectors for loose connections. The employees have followed that procedure since the accident. The same employees testified in the depositions that prior to the accident they did not believe that such procedure was necessary. One deponent, Frank Mingus, Station and Equipment Superintendent for Western Farmers, testified that Western Farmers thought, prior to the accident, that such a policy was likely to do more harm than good.

■ General Electric contends that if this procedure had been followed the accident would not have happened. However, the evidence in question does not necessarily bar the plaintiff Barber because it does not establish his assumption of risk or contributory negligence. Nor does it establish this as to Western Farmers. In any event, assumption of risk is relevant only if it shows that there has been a voluntary assumption of a *known* risk. *Kirkland v. General Motors Corp., supra; Hogue v. A. B. Chance Company*, 592 P.2d 973 (Okl. 1978). If General Electric is, in fact, arguing that Western Farmers was aware of a known defect, such a question would be for the jury.

■ The testimony does raise an important issue, however. That is whether the transformer was defective when delivered to Western Farmers solely because Western Farmers was not warned that an inspection in accord with the suggested procedures was vital, and that in its absence there would be a fire or explosion. If the risk was of this magnitude it seems strange that General Electric did not attach a warning sign to the transformer in a conspicuous place.

From the present record it is plain that summary judgment is not the remedy in this case because there is no lack of a factual dispute as to whether the product was defective when it left General Electric. It is noteworthy that the General Electric emphasis is on its own inquiry which pursues the proposition that Western Farmers failed to heed General Electric's instructions. This in itself involves a question whether the equipment was defective when it departed from General Electric.

■ Oklahoma follows the well accepted principle that failure to warn may be, in itself, a defect within the product. *Smith v. United States Gypsum Co.*, 612 P.2d 251 (Okl.1980), *reh. denied*, 1980. *See also Hiigel v. General Motors*, 190 Colo. 57, 544 P.2d 983 (1975). There the Colorado Supreme Court noted that the adequacy of warning, or the requirement of a warning, is to be determined only after the consideration of the likelihood of accident and the seriousness of the consequences of failure to warn. Such questions are factual and are to be decided by the jury.

Plaintiff did not specifically raise the issue of the failure to warn in the proceedings below. However, it is a much present issue in the case. The contents of the depositions taken by General Electric make this clear. It is not clear as a matter of law that a suggested means for inspecting a transformer found in an instruction manual is an adequate means for communicating a warning where, as here, the risk of non-inspection is great.

■ We do not agree that the fact that plaintiff is unable to show a defect in the circuit board, which board was destroyed by General Electric after the fire, should preclude the plaintiff from proving his cause of action by circumstantial evidence. The Oklahoma Supreme Court in *Kirkland, supra*, recognized that in a products liability case proof can be through circumstances and inferences rather than direct evidence, since actual or direct proof of the defect in a sophisticated product may be within the

sole knowledge or possession of the defendant. *See also, Tigert v. Admiral Corp.*, 612 P.2d 1381 (Okl.App.1979).

 We are not advancing an opinion on the ability of plaintiff to succeed on the merits. We do say that the evidence in the record is sufficient to show the existence of several fact questions in connection with the standards which are set forth in *Kirkland, supra.* There are undoubtedly other fact questions. One of particular importance which comes to mind is the question of whether the fire-explosion occurred as a result of General Electric's failure to warn Western Farmers that its transformer could explode and burn if the suggestions in its installment manual were not followed, thereby rendering the transformer defective under Oklahoma law at the time it left General Electric's hands. This latter issue is relevant to both Points 2. and 3. in *Kirkland, supra.* They must be proved in order to successfully maintain an action for products liability. Depositions of the medical doctors involved also indicate the existence of a factual issue regarding whether the allegedly defective transformer and resulting accident were the factual cause of Barber's injuries. This issue is relevant to the first standard which is set forth in *Kirkland, supra,* and which plaintiff must fulfill in order to succeed in his case.

It is not the duty of the trial court to weigh the evidence between the plaintiff and the defendant on a motion for summary judgment. Nor is it the purpose of the summary judgment remedy to serve as a substitute for a trial by the judge or for a trial by jury. In this case there are factual disputes in connection with each of the three areas or standards which are set forth in *Kirkland, supra.* Therefore, summary judgment is not applicable.

The judgment of the district court is reversed and the cause is remanded for a trial in accordance with the views express herein.