UNITED STATES of America, Plaintiff,

v.

Dale VALENTINE, Jim's Water Service, Inc., Phillips Petroleum Company, Inc., Texaco Refining and Marketing Inc., True Oil Company, Richard J. Wallace, Conoco Pipe Line Company, Eighty–Eight Oil Company, Valentine Construction Company, Inc., and William Valentine and Sons, Defendants.

No. 93–CV–1005–J.

United States District Court,
D. Wyoming.

June 1, 1994.

David Freudenthal, U.S. Atty., Cheyenne, WY, David Kubichek, Asst. U.S. Atty., Casper, WY, Myles Flint, Anna Thode, Drenaye Houston, Sarah Himmelhoch, David Askman, Dept. of Justice, Washington, DC, Linda Kato, E.P.A., Denver, CO, and Michael Northridge, E.P.A., Washington, DC, for plaintiff.

James W. Owens, James R. Bell, Murane & Bostwick; Jon B. Huss, Brown & Drew, Casper, WY, Carl L. Lathrop, J. Kent Rutledge, Lathrop & Rutledge; Glenn E. Smith, Glenn E. Smith & Associates; Steven F. Freudenthal, Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, WY, John R. Vincent, Vincent & Vincent, Riverton, WY, Tom C. Toner, Yonkee & Toner, Sheridan, WY, David A. Bailey, William J. Duffy, Parcel, Mauro, Hultin & Spaanstra, Denver, CO, J.N. Murdock, Mark W. Gifford, Reeves, Murdock & Gifford, Casper, WY, Christopher J. Dodson, George A. Phair, Conoco, Inc., Houston, TX, John D. McCarthy, John L. Watson, Holme, Roberts & Owen,

Denver, CO, Manuel A. Lojo, True Oil Co., Casper, WY, H.W. Rasmussen, Badley & Rasmussen, Sheridan, WY, William M. McKellar, Boley & McKellar, Cheyenne, WY, Don Jemison, Elaine M. Allan, Phillips Petroleum Co., Inc., Bartlesville, OK, Edward W. Harris, Lynnette J. Boomgaarden, Holland & Hart, Cheyenne, WY, Anthony L. Joseph, Holland & Hart; and Chris A. Mattison, and James W. Britt, Hall & Evans, Denver, CO, for defendants.

William Valentine and Sons, Inc., Dale Valentine, pro se.

### ORDER AND DECISION ON MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter came before the Court on the United States of America's March 7, 1994 Motion for Summary Judgment. Hearing was held on April 15, 1994. Having carefully considered the pleadings on file and the arguments of counsel, being fully advised in the premises, and in accordance with the findings from the bench made at the time of hearing, the Court FINDS and ORDERS as follows:

### Background

The United States in its complaint seeks enforcement of the administrative orders issued by the United States Environmental Protection Agency ("EPA") under Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973 (1992) and civil penalties for defendants' failure to comply with those orders. In a separate, independent claim, the United States seeks injunctive relief, pursuant to Section 7003, to address the continuing threat to the environment posed by present conditions at the Powder River Crude Processors Site ("Site") outside of Glenrock, Wyoming.

In his May 20, 1993 Order on Initial Pretrial Conference, the United States Magistrate Judge bifurcated this action into two phases.[1]

The Site was operated as an oil reclaiming facility during the 1970s and 1980s. When EPA issued the administrative orders, there were several open, unlined pits containing oily wastes at the Site. The twenty-three tanks at the Site, some of which were decaying and leaking, also contained oily wastes in varying quantities. Soils around the tanks and pits were stained and saturated with oily wastes. Samples of the soils in these areas indicated the presence of various toxins including benzene, toluene, ethylbenzene, and xylene.

At the time EPA issued the administrative orders, the evidence in EPA's possession also indicated that there was the potential for off-site migration of contaminants through a shallow drainage ditch that led from the Site down-gradient toward the North Platte River. In addition, there was limited information about the migration of these oily wastes in the soil, subsurface, and groundwater. Further, Site records indicated that there had been a fire and/or an explosion at the Site.

The Site served, and continues to serve, as a habitat for various wildlife species. The U.S. Fish and Wildlife Service advised EPA that the Site may pose a threat to the bald eagle and the peregrine falcon, both of which are protected by federal law. At the time EPA issued the administrative orders, access to the Site was unrestricted except for a low barbed wire fence with no gate.

Scientific papers demonstrated that the toxins in the pits posed significant health risks to birds and other wildlife. The U.S. Fish and Wildlife Service informed EPA that pits such as the ones at the Site serve as a lure to wildlife because the oily shiny surfaces of the pits look like water. Once attracted to the Site, animals may become coated with oil and may become trapped, leading to death by suffocation or exposure. Even animals that escape the pits can die or become sick from eating oil while cleaning their fur or eating vegetation coated with oily

---

1. Under this bifurcation, Phase I encompassed the issues related to the presence of an imminent and substantial endangerment at the Site. Phase II comprised all remaining issues. Hence, the defendants' arguments with respect to other elements of their individual liability are not before the Court for purposes of summary judgment on Phase I issues and the Court makes no ruling on Defendant Jim's Water Service's arguments regarding whether and to what extent it contributed to the handling of wastes at the Site.

wastes. Therefore, there was, and continues to be, a risk that animals may come into contact with the oily wastes and be exposed to the physical and toxicological hazards posed by these wastes. In fact, inspectors had found dead animals mired in oil at the Site.

Based upon this information, EPA issued orders pursuant to RCRA Section 7003 that required the recipients to:[2]

(1) address the known risks posed by these conditions by submitting a work plan for the removal and disposal of all materials from the pits and tanks;

(2) immediately and temporarily secure the Site by installing certain interim measures; and

(3) determine whether there were additional impacts of these conditions by conducting further investigations.

In response to these orders, some of the defendants not subject to the summary judgment motion installed a chain link fence, placed polypropylene netting over the pits, and conducted limited sampling and testing of the wastes and equipment at the Site. None of these measures, however, is sufficient to exclude wildlife from the Site or to prevent further leaks from the tanks and pits. For instance, in each of the nets there are holes large enough to permit access by birds and small mammals. Further, the equipment at the Site continues to deteriorate and leak. After the filing of this action, the United States discovered twelve more dead animals mired in oily wastes leaking from a tank at the Site.

### Standard of Review

 Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.*, 648 F.2d 1272 (10th Cir.1981).

 Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

### Discussion

Under any standard or review, the undisputed facts demonstrate that (1) conditions at the Site may have presented an imminent and substantial endangerment at the time the administrative orders were issued and (2) present site conditions may present an imminent and substantial endangerment.[3] Therefore, the United States is entitled to summary judgment as a matter of law on all Phase I issues.[4]

---

**2.** The United States brought this action against ten defendants. Five of these defendants (Texaco Refining & Marketing, Inc., Phillips Petroleum Company, Conoco Pipe Line Company, True Oil Company, and Eighty–Eight Oil Company) have reached a settlement with the United States that has been lodged with the Court and has been undergoing public comment. Of the remaining defendants, Jim's Water Service, Richard Wallace, and Valentine Construction Company were issued orders while Dale Valentine and William Valentine & Sons were not.

**3.** This Court's grant of summary judgment on all Phase I issues may render the United States' Motion for Ruling on Record Review moot. This Court makes no finding with respect to that motion.

**4.** The Order on Initial Pretrial Conference also set the issue of whether the administrative orders were "reasonable" for Phase I. As this Court has previously held, by using the term "reasonable" in this Order and the Order on Initial Pretrial Conference, the Court does not seek to

Under Section 7003(a) of RCRA, 42 U.S.C. § 6973(a):

> upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment [EPA may seek injunctive relief from or issue administrative orders to a]ny person ... who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal.

In analyzing the language of Section 7003, the Court should give the words employed by Congress their ordinary meaning, *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979), while also construing them "in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Connecticut Coastal Fisherman's Assoc. v. Remington Arms Co., Inc.,* 989 F.2d 1305, 1308 (2d Cir.1993). Accordingly, Section 7003 should be construed in a liberal, rather than a restrictive, manner. *See United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1383 (8th Cir.1989); *United States v. Waste Indus., Inc.,* 734 F.2d 159, 167 (4th Cir.1984).

To take action under Section 7003, EPA need not prove that an endangerment actually exists. It is sufficient to demonstrate that there *may* be "an imminent and substantial endangerment." 42 U.S.C. § 6973(a); *Lincoln Properties, Ltd. v. Higgins,* 23 Envtl.L.Rep. (Envtl.L.Inst.) 20665, 20671, 1993 WL 217429 (E.D.Cal.1993); *Waste Indus.,* 734 F.2d at 164. An endangerment is not actual harm, but a threatened or potential harm. *Dague v. City of Burlington,* 935 F.2d 1343, 1355 (2d Cir.1991); *Waste Indus.,* 734 F.2d at 165. Section 7003 further requires that the endangerment be imminent. 42 U.S.C. § 6973(a). An endangerment need be neither immediate nor tanta-

mount to an emergency to be imminent and warrant relief. *Waste Indus.,* 734 F.2d at 165. Rather, an endangerment is imminent if factors giving rise to it are present, even though the harm may not be realized for years. *United States v. Conservation Chem.,* 619 F.Supp. 162, 193–94 (D.Mo.1985). Section 7003 finally requires that an endangerment be substantial. The United States need not quantify the endangerment to prove that it is substantial. It is sufficient to demonstrate that there exists reasonable cause for concern for the integrity of the public health or the environment. *Lincoln Properties,* 23 Envtl.L.Rep. (Envtl.L.Inst.) at 20671; *Conservation Chem.,* 619 F.Supp. at 194. The EPA's decision that Site conditions may have presented an imminent and substantial endangerment at the time the administrative orders were issued was supported by substantial evidence.

The defendants' arguments are insufficient to defeat this evidence. Contrary to the defendants' arguments, EPA acted properly by requiring the defendants to assess the risks posed by Site conditions. *See United States v. Price,* 688 F.2d 204, 213 (1982). In addition, the National Environmental Policy Act, 42 U.S.C. § 4332, is not applicable to this case because this is not a major federal action within the meaning of the statute.

Defendants also argue that the substances at the Site could not pose an imminent and substantial endangerment because they did not exhibit the RCRA subtitle C characteristic of toxicity. Specifically, defendant Jim's Water Service argues that the fact that only three of fifty samples failed the toxicity characteristic leachate procedure ("TLCP") demonstrates that there is no risk to the environment because the materials will not migrate. Even if this argument is supported by the evidence, the United States has provided uncontroverted expert testimony that the material in place, regardless of migration, poses a substantial risk of death

define the appropriate standard of review for administrative orders. In finding that the conditions at the Site may have presented an imminent and substantial endangerment at the time the administrative orders were issued, this Court finds that, under any standard of review, the orders were in accordance with the requirements of Section 7003, 42 U.S.C. § 6973, and were thus "reasonable" within the meaning of the Order on Initial Pretrial Conference.

and injury to wildlife. Section 7003 does not require EPA to show off-site migration to demonstrate that conditions at a site may present an imminent and substantial endangerment.

Moreover, defendants' position is contrary to the plain language of the statute. The TCLP procedure is one method used to determine whether a substance is a hazardous waste within the meaning of subtitle C of RCRA. Section 7003 is not in subtitle C, but in a separate portion of RCRA that is governed by the statutory definitions of hazardous waste. *See* 40 C.F.R. § 261.1(b)(2). Further, Section 7003 explicitly provides that EPA may take action in response to a solid waste that may pose an imminent and substantial endangerment.

Defendants also seek to create several factual issues that are neither genuine nor material. Defendant Jim's Water Services argues that the failure of EPA to perform a post mortem on each dead animal at the Site precludes any inference as to the cause of death. RCRA Section 7003 does not require EPA to conduct post mortems on the remains of creatures that were found in puddles or wildlife located in the nearby area to justify the conclusion that the conditions at a site may pose an imminent and substantial endangerment. The circumstantial evidence offered by the United States, including the amount of wastes at the Site, the leaks from the tanks and pipes, the contaminated soils, the discovery of dead birds mired in oily wastes, the presence of toxins in those wastes, the advice of the U.S. Fish and Wildlife Service, and the available scientific literature, created a sufficient inference that an imminent and substantial endangerment may have existed at the time the administrative orders were issued and may exist today.

Further, the single letter from the Wyoming Game & Fish Department stating that it is unaware of impacts from the Site is insufficient to create a genuine issue of material fact. There is no evidence that this letter was based on an investigation by the Game & Fish Department. Moreover, the Department's own game warden later provided an eye witness account of actual harm to wildlife.

Defendant Jim's Water Service argues that it was denied due process because it was not provided with the opportunity for a hearing prior to the issuance of the administrative orders. This defendant further argues that it was denied the opportunity to confer with the EPA on issues of liability subsequent to the issuance of the administrative orders. This latter argument is not supported by the record, which demonstrates that, pursuant to a provision in the administrative orders providing an opportunity to confer, defendants were provided with and availed themselves of at least two conferences with EPA. While the purpose of those meetings was to discuss issues related to the implementation of the administrative orders, including alternative cleanup plans, at those meetings the EPA did entertain questions related to why defendants were obligated to comply with the administrative orders. Thus, the defendants were given a timely opportunity to confer with EPA regarding the implementation of the administrative orders. Moreover, during the Phase II trial, defendants will be provided an opportunity to challenge their liability under Section 7003. Therefore, the defendants' due process rights have been met. Accordingly, and for the foregoing reasons, it is

**ORDERED** that the plaintiff's motion for summary judgment on all Phase I issues shall be, and is, **GRANTED.**