Rhonda **BROWN**, a Minor by Roosevelt and Drucilla **BROWN**, Parents, Plaintiffs,

v.

**STONE MANUFACTURING COMPANY, INC., Defendant.**

**Civ. A. No. S85–0803(NG).**

United States District Court, S.D. Mississippi, S.D.

Nov. 14, 1986.

---

David Slaughter, Stanford Young, Waynesboro, Miss., Peter K. Smith, Quitman, Miss., for plaintiffs.

Thomas E. Vaughn, Timothy D. Crawley, Alben N.J. Hopkins, Gulfport, Miss., for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

Minor Plaintiff Rhonda Brown, by and through her parents, has brought this action against Defendant Stone Manufacturing Company, Inc., ("Stone") seeking compensatory and punitive damages for injuries sustained by her when the nightgown she was wearing caught fire as she attempted to escape the house fire which destroyed her parents' home in Clarke County, Mississippi. Plaintiff alleges Defendant manufactured the garment and that her injuries were proximately caused by the Defendant under theories of negligence, breach of express and implied warranties, and strict liability. Defendant has moved for summary judgment.

## I. STATEMENT OF THE FACTS

In the early morning hours of March 3, 1980, a fire broke out at the home of Roosevelt and Drucilla Brown in rural Clarke County. According to Plaintiffs' deposition testimony, the blaze erupted from an electric space heater located in the bedroom where eleven-year-old Rhonda was sleeping. Rhonda awakened to her mother's screams, ran to her bedroom door, opened the door to the hallway, and then ran through the smoke and fire to the kitchen area and then out the carport door. The gown first caught fire as Rhonda approached her bedroom door, situated adjacent to the heater, in order to exit it. Once outside, the child's parents rolled her on the ground and threw a rug over her to extinguish the remaining flames. She was taken immediately to a local hospital for treatment. The unburned portions of the gown were discarded at the emergency room. Rhonda has since had to undergo extensive medical treatment, including skin grafting, plastic surgery and psychiatric care.

Approximately eight months after the fire Roosevelt and Drucilla Brown purchased, on the advice of their attorney, a pink nightgown from Bill's Dollar Store in Quitman, Mississippi, which in their estimation was similar to the one worn by Rhonda the night of the fire. Mrs. Brown took the gown to Rhonda at school so that the child could likewise identify it. The gown now appears as "Exhibit A" to the Complaint.

## II. CONCLUSIONS OF LAW

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "... the

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shown that there is no genuine issue as to any material fact...." Federal Rules of Civil Procedure 56(c); *Bynum v. FMC Corp.*, 770 F.2d 556, 576 (5th Cir.1985). The moving party carries the burden of "showing"—that is, pointing out to the Court—the absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to the requirement of materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With respect to whether the factual dispute has created a genuine issue, "... summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure 56(e); *Thomas v. Harris County*, 784 F.2d 648 (5th Cir.1986). Should the party opposing the motion fail to meet its burden, "... the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra. Also see Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).

### A. Evidence Identifying the Defendant as Manufacturer

■ It is axiomatic that there must appear from the record—for purposes of the motion now before the Court—sufficient evidence to create a jury issue not only with respect to the potential liability of the Defendant, but also with respect to the threshold question of whether this Defendant is in fact the manufacturer of the garment worn by Rhonda the night of the fire. In other words, before this Court can determine whether a genuine issue of material fact exists with respect to whether a defective product caused the minor Plaintiff's injuries, such a factual issue regarding identification of the nightgown worn by Rhonda the night of the fire as a product manufactured by Stone must first be deemed present. *See Crocker v. Sears, Roebuck & Co.*, 346 So.2d 921 (Miss.1977); *Toliver v. General Motors Corp.*, 482 So.2d 213 (Miss.1986). For the reasons outlined below, the Court has determined that the evidence adduced to date is insufficient to warrant submission of this threshold issue of identification to a jury for resolution.

Subsequent to Drucilla Brown's purchase of "Exhibit A" to the Complaint in approximately November, 1980, Plaintiffs forwarded information obtained from the gown's label to W.E. Walker Stores, Inc. ("Walker"), the parent company of Bill's Dollar Store, and received a letter in July, 1981, from a Walker purchasing agent which, coupled with the affidavit of Plaintiffs' counsel, identified the manufacturer of "Exhibit A" as the Defendant. An affidavit from Walker's General Merchandising Manager establishes that identification of the Defendant as the manufacturer of a particular garment sold by Walker is not possible without either the RN number printed on the garment tag or the Item Number assigned to the garment by Walker being submitted. Significantly, the parties have stipulated that the Defendant is only one of a number [1] of manufacturers from whom Walker purchases ready-to-wear garments such as the one depicted in Exhibit "A" to the Complaint. And although the Defendant has responded affirmatively to Plaintiff's interrogatory which asks, "Do you admit manufacturing, marketing and/or distributing for sale to the general public prior to March 3, 1980,

---

**1.** The precise number of manufacturers is un-     specified.

children's nightgowns such as the one depicted in 'Exhibit A' to the Complaint?'', it is admitted by Plaintiffs that the gown worn by Rhonda on the night of the fire and all identifying numbers attached thereto were either destroyed in the fire or thrown away at the hospital. Further, Thomas M. Mitchell, Defendant's Vice-President of Corporate Standards and Quality Control, testified by deposition that although he could not definitively rule out the possibility that on the night of the fire the minor Plaintiff was wearing a nightgown manufactured by the Defendant—based on the descriptions provided in Plaintiffs' depositions—his review of company records and invoices disclosed that the style of nightgown depicted in Exhibit "A" to the Complaint was distributed in 1979–1980 to Walker stores in Georgia, Kentucky and New Jersey but not to any in Mississippi during that time period; Mitchell did not, however, foreclose the possibility that the Exhibit "A" nightgown style may have been sold to a company located outside of Mississippi and then distributed into the state.

The only remaining affirmative evidence Plaintiffs cite in their attempt to match Exhibit "A" with the gown worn by Rhonda on the night of March 3, 1980, is the deposition testimony of the Plaintiffs themselves. Their respective accounts of which gown Rhonda wore that night are at variance, however, in several material respects.

Drucilla Brown's version holds that Rhonda received several gowns for Christmas in 1979 but that the one she wore the night of the fire had been a Christmas present from Rhonda's sister Doris. Doris had reportedly told Mrs. Brown that she purchased the gown from Bill's Dollar Store in Quitman but Doris was not sure when the purchase was made. Mrs. Brown had also bought a gown for Rhonda from Bill's Dollar Store but, according to Mrs. Brown, this gown was worn by her granddaughter, Nisa, the night of the fire. When Mrs. Brown returned to the store accompanied by her husband in approximately November, 1980, to purchase a replica, she was guided solely by her memory of the gown's design, texture and appearance. Mrs. Brown remembered generally that Rhonda had worn a size 8, pink gown. She indicated that the clothing racks in the store had moved from where they had been in 1979. Finally, Mrs. Brown recalled that the laundering instructions appearing on the label of the gown Rhonda wore the night of the fire had read "wash in warm water; rinse in cold; wash by hand". The instructions on the tag attached to Exhibit "A", however, say "machine wash warm ... rinse well ... tumble dry...."

Roosevelt Brown's recollection of the type of nightgown Rhonda wore the night of the fire relates that it was "pinkish looking" with a design in front that was "kind of orange and mixed with green or something." Mr. Brown also thought Rhonda was wearing the gown Doris had purchased from Bill's Dollar Store and given to her as a Christmas present. Mr. Brown testified that it "might have been a year" when he and his wife went back to the store to purchase Exhibit "A", but that once inside the store they "went right to place where she got that one off from the same rack."

Rhonda's version states that on the night of the fire she wore a pink, size 8 gown her mother had given her for Christmas. When Mrs. Brown took Exhibit "A" to Rhonda for her identification, Rhonda testified that it was "sort of like" and "similar" to the one she had worn, but was "just pink" and didn't have the same, or any, color design. Rhonda recounted that both gowns were long with long sleeves, but she thought the gown Doris had given her had short sleeves. Rhonda could not recall any information appearing on the garments' tags or labels.

The sum total of the evidence urged by Plaintiff as identifying the Defendant as the allegedly culpable manufacturer described in the Complaint—or at least creating a genuine issue of material fact as to same—does not. To submit this issue to a jury for its determination in the light of this evidence would require it to engage in pure speculation and conjecture to conclude that the Defendant manufactured the garment Rhonda Brown wore the night of

March 3, 1980. No genuine issue for a jury's resolution has arisen because the facts cited in support of and in opposition to Defendant's motion have simply not been material enough to allow a jury to reasonably conclude that the gown Rhonda was wearing had in fact been manufactured by the Defendant. The Court cannot allow a jury to consider the substantive issue of causation if the jury has had to resort to guesswork in identifying whether the Defendant is the proper manufacturer Plaintiffs seek to hold liable. Accordingly, the Court is of the opinion that Defendant's motion for summary judgment should be granted.

### B. Flammability Test Reports

■ As an alternative ground for granting its motion, Defendant has produced results of flammability testing performed on the fabric contained in Exhibit "A" to Plaintiffs' Complaint. According to the test results, the fabric meets and exceeds federally mandated standards and requirements. Defendant cites *Simien v. S.S. Kresge Co.*, 566 F.2d 551 (5th Cir.1978), a products liability action brought against the alleged seller to recover for injuries suffered by the Plaintiff when the jacket he was wearing caught fire. The Fifth Circuit had the following to say with respect to the Plaintiff's burden of proof in order to submit to a jury the question of whether the jacket was dangerously inflammable in the face of favorable testing results:

> This testimony that the fabric far exceeds the minimum federal requirements is evidence, indeed substantial evidence, that the jacket was not unreasonably dangerous. *See Bellotte v. Zayre Corp.*, 531 F.2d 1100 (1st Cir.1976) (applying Restatement (Second) of Torts Section 402A as adopted by New Hampshire). Nevertheless, we recognize that other courts in addressing this problem have held that compliance with the standard is not conclusive as a measure of defectiveness or unreasonable danger. *See Raymond v. Riegel Textile Corporation*, 484 F.2d 1025 (1st Cir.1973); *La Gorga v. Kroger Company*, 275 F.Supp. 373 (W.D.

Pa.1967). *If the plaintiff produces substantial expert or lay evidence that a fabric which complies with the federal standard is nevertheless unreasonably dangerous for normal use, the plaintiff is entitled to a jury determination.* (emphasis supplied).

In the case *sub judice*—assuming the existence of a genuine issue of material fact regarding identification of the Defendant as the proper manufacturer—Plaintiff has still failed to produce substantial expert or lay evidence to rebut Exhibit "A" 's proven compliance with applicable federal regulatory standards. The lay evidence that does exist has come from the minor Plaintiff's deposition testimony:

Q. When you opened that door to your bedroom, where were the flames?

A. Right side the door.

Q. Momentarily after that happened, tell us what happened to your nightgown.

A. Well, it just caught on fire. And I started running, 'cause I felt the heat on my body, and I started running.

Q. Alright. So, how long would you say your best judgment would be, when you opened that door, before it was that your nightgown caught on fire, as you stood right there at the flames?

A. I'd say about three seconds, 'cause I ran out the door and I looked down and it was on fire and I started running.

\* \* \* \* \* \*

Q. Now, before you opened that door, had the flames already started coming into your room? I mean, could you see the flames from the heater where it was burning through the wall?

A. You mean before I come out of the room?

Q. Right.

A. Yes, sir. Because—when I walked, going by the heater, that's when my gown caught on fire, but I still had to go through the fire anyway to get out, because it was on fire. The hallway was on fire.

Q. Right.

A. So I still had to go through the fire.

Q. That's right. Your gown caught on fire, though, when you had walked to the point of being in front of the heater?

A. Yes, sir.

Q. And that's where the fire had started, at the heater, right?

A. Yes, sir.

Q. And from that point on to the door, the room was full of fire, wasn't it?

A. Yes, sir.

\* \* \* \* \* \*

Q. When—the point of time that your nightgown caught on fire—did it start melting on you? In other words, how quickly did this melting business occur?

A. When it caught on fire, it started at the time when it got right back up here, 'cause it was stuck and started melting when it was getting on up.

Q. Was that before you ran down the hallway?

A. What do you mean; was it stuck before I started running?

Q. Sure.

A. Oh, yes, sir.

Q. How many seconds would you say it took to do that—to melt on you? Your best judgment.

A. I don't know how many seconds. Because it was like so quick, I just don't know.

Rhonda Brown's Deposition, pp. 31–2, 38, and 40–1.

The Court does not regard the above testimony as the kind of substantial lay evidence contemplated by the Fifth Circuit in *Simien* which would warrant submission to a jury for its determination of whether Exhibit "A" is unreasonably dangerous for normal use notwithstanding flammability test results to the contrary. Accordingly, it is the opinion of the Court that the Defendant's motion should also be granted on this alternative ground.

## III. CONCLUSION

Based on the evidence before the Court at this stage of the proceedings, and the Court's conclusions of law as set forth above, the Court finds that Defendant's motion for summary judgment should be granted. Counsel for Defendant, Stone Manufacturing Company, Inc., shall furnish a Judgment consistent with the findings in this Opinion within ten (10) days of the date hereof.