**Margarita Sue ALVARADO, Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC., et al., Defendants.**

**No. 83–4375–R.**

United States District Court, D. Kansas.

June 12, 1991.

(1) intervenor Crowntuft Manufacturing Corporation, Inc.'s motion for summary judgment (Doc. #175); (2) intervenor Milco Industries, Inc.'s motion for summary judgment (Doc. #296); and (3) defendant J.C. Penney Company, Inc.'s motion for summary judgment (Doc. #309). The court has held oral argument on these motions and is now prepared to rule.

For what the court hopes is the final time, we shall review the complicated past of this litigation. Plaintiff filed her complaint on December 16, 1983 against J.C. Penney Company, Inc. In her complaint, plaintiff alleged that she was severely burned on December 19, 1981 when a nightgown she was wearing caught fire. Plaintiff further alleged that the nightgown's defective and unreasonably dangerous conditions caused her injuries, and that the nightgown was designed, manufactured and distributed by Penney. The stated cause of action was strict liability. Also on December 16, 1983, plaintiff filed an amended complaint which added three causes of action: (1) negligence, (2) breach of express warranty, and (3) breach of implied warranty.

On July 29, 1985, plaintiff sought to amend her complaint to add Milco Industries, Inc. and Crowntuft Manufacturing Corporation, Inc. as defendants. This motion was ultimately granted, and plaintiff filed her amended complaint on October 2, 1985. The second amended complaint added the contention that plaintiff's injuries on December 19, 1981 were also caused by a defective and unreasonably dangerous robe worn by her. The amended complaint asserted that the nightgown and robe worn by plaintiff on December 19, 1981 were designed, manufactured, distributed and sold by the defendants to the plaintiff through Penney's store in Emporia, Kansas. Milco followed the filing of the second amended complaint with a motion to dismiss. Crowntuft then filed a motion to dismiss or for summary judgment. Penney later filed a motion for summary judgment. Plaintiff then filed a motion to dismiss Crowntuft without prejudice.

Lynn W. Hursh, Armstrong, Teasdale, Schlafly, Davis & Dicus, Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, Kan., Bernard J. Robertson, Exeter, N.H., for Margarita Sue Alvarado.

Kip A. Kubin, Payne & Jones Chartered, Frank Saunders, Jr., Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for J.C. Penney Co., Inc.

Bruce Keplinger, Payne & Jones Chartered, Overland Park, Kan., for Milco Industries, Inc.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Crowntuft Mfg. Corp., Inc.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This case has a long and troubled history. The resolution of the pending motions should move it closer to a conclusion. The following motions are presently pending:

On May 19, 1987, the court resolved some of the motions pending at that time. The court granted plaintiff's motion to dismiss Crowntuft without prejudice. The court did, however, impose certain conditions in the order of dismissal upon plaintiff at the request of Crowntuft. The motion to dismiss or for summary judgment filed by Crowntuft was denied as moot in light of the dismissal without prejudice. The court denied Penney's motion for summary judgment because of the presence of disputed fact issues. On June 10, 1987, the court granted Milco's motion to dismiss. We found that plaintiff's claims against Milco were barred by the statute of limitations.

On October 20, 1987, counsel for defendant Penney wrote to the insurance carriers for Crowntuft and Milco stating that Penney would seek to invoke the provisions of K.S.A. 84-2-607 in a future indemnity action against Crowntuft and Milco. On November 6, 1987, the court signed and filed the final pretrial order in this case. Shortly thereafter, Milco and Crowntuft filed motions to intervene. Crowntuft also sought reconsideration of its motion to dismiss or for summary judgment. Milco and Crowntuft sought to intervene based on the vouching in letters sent by Penney. Penney then filed a motion for summary judgment and a motion for stay. We stayed any ruling on the motions to intervene until we decided the motion for summary judgment.

On May 16, 1989, we denied Penney's motion for summary judgment. 713 F.Supp. 1389 (D.Kan.1989). We subsequently amended this order upon a motion for reconsideration filed by the plaintiff. 735 F.Supp. 371 (D.Kan.1990). We then granted the motions to intervene filed by Crowntuft and Milco. We directed Penney to respond to Crowntuft's motion to dismiss or for summary judgment as it related to the identity of the manufacturer of the robe. We noted that "[t]he question of the identity of manufacturer of the robe is an important issue that needs to be examined." Various responses and replies were filed by all the parties to the action. In addition, Milco and Penney filed motions for summary judgment.

With this lengthy recitation of the history, the court shall turn to the arguments contained in the pending motions. The court will examine the facts relevant to each motion as we consider the motions.

■ In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the opposing party. *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53.

■ Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511–12 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

## MOTION FOR SUMMARY JUDGMENT FILED BY CROWNTUFT

In its motion, Crowntuft argues that the robe worn by plaintiff on the night of the fire was not of Crowntuft manufacture or origin. Crowntuft contends that the evidence fully supports this assertion and that there is no genuine issue of material fact on this issue present in the record.

■ Penney initially raises a procedural argument in response to Crowntuft's motion for summary judgment. Penney argues that the motion should not be considered because Crowntuft should not have been allowed to intervene. Penney asserts that the only options available to Crowntuft under K.S.A. 84–2–607(5) were to either elect not to participate in this action or to defend Penney. Accordingly, Penney contends that Crowntuft's entry into this action and the filing of the instant motion are improper.

Crowntuft sought to intervene in this action after receiving a "vouching in" letter from Penney. The letter was written pursuant to the provisions of K.S.A. 84–2–607(5)(a) which read as follows:

(5) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

(a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

Following receipt of the letter, Crowntuft filed a motion to intervene pursuant to Fed.R.Civ.P. 24(a)(2). Penney indicated that it had no opposition to intervention by Crowntuft. Plaintiff, however, did object to Crowntuft's proposed intervention. The court subsequently found no merit to plaintiff's arguments and granted Crowntuft's motion. The court directed Penney to respond to Crowntuft's previously filed motion to dismiss or for summary judgment, which the court had earlier determined was moot in light of plaintiff's dismissal of Crowntuft from this action, as it related to the identity of the manufacturer of the robe.

The court finds no merit to Penney's procedural argument for several reasons. Before we discuss those reasons, we find it necessary to briefly examine the concept of vouching in. Vouching in is a term derived from the common law procedural device of "vouching to warranty." 1B *Moore's Federal Practice* 0.405[9] (1988). The device has been codified in the Uniform Commercial Code and adopted by Kansas in K.S.A. 84–2–607(5). The vouching in procedure involves three parties: the seller or vouchee; the purchaser, defendant-buyer, or voucher; and the subsequent purchaser, plaintiff. Squillante, Commercial Code Review—A Summary of Lending Decision and Articles: Problems Relating to Vouching In Under the Code, 78 Com.L.J. 320, 321 (1973). A defendant-buyer may vouch in the entity that sold the product to it after it has been sued by the plaintiff based on negligence, breach of warranty or strict liability. Comment, Voucher to Products Liability: The Mechanics of U.C.C. § 2–607(5)(a), 29 Ark.L.Rev. 486, 493 (1976). Generally, the seller must then determine whether to defend the defendant-buyer or not participate in the action. The seller's decision not to participate means that the seller will be bound in a later action by "any determination of fact common to the two litigations." K.S.A. 84–2–607(5)(a). However, the mere finding that the defendant-buyer is liable to the plaintiff does not, without more, entitle the defendant-buyer to indemnity from the seller under K.S.A. 84–2–607(5). *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517, 529 (1983).

The question presented by the argument raised by Penney is whether the seller has a third option after receiving a vouching in letter—the right to intervene in the lawsuit. Penney argues that Crowntuft has no such right and relies upon *Urbach v. City of New York*, 46 Misc.2d 503, 259 N.Y.S.2d 975 (1965). In *Urbach*, the plaintiff brought an action against the City of

New York for personal injuries sustained by a fall on a public sidewalk. The City sent the United States a vouching in letter contending that the United States was responsible for the plaintiff's injuries due to its employees' negligence. The notice to the government requested it to come in and defend the action at its own expense. The United States responded by filing a motion to strike the notice. The trial court denied the motion. On appeal, the Supreme Court affirmed and stated:

> In short, the United States moves with respect to the notice of vouching-in as though it were a third-party complaint—which it is not. It does not have the effect of process so that if the notice were proper in all respects, as required by law, the city could not have judgment over, if entitled thereto, as in the case of a third-party complaint—but would be required to commence a new action in the Federal court where all of the objections raised here would be offered defensively. A motion to dismiss the notice of vouching-in is not authorized by statute.

*Id.,* 259 N.Y.S.2d at 977.

The court does not find that *Urbach* is determinative here. In *Urbach,* the United States did not seek to intervene. Rather, the United States sought to dismiss the vouching in notice. The court's decision made clear that a vouchee is not, by virtue of the vouching in letter, made a party to the action. Accordingly, the vouchee has no right to seek to dismiss or vacate the notice of vouching in. Comment, 29 Ark. L.Rev. at 498. However, the vouchee is not precluded from seeking to intervene. In *Bay State Heating & Air Conditioning Co. v. American Insurance Co.,* 78 A.D.2d 147, 434 N.Y.S.2d 66 (N.Y.App.Div.1980), the Appellate Division of the New York Supreme Court decided whether a vouchee could intervene even though the vouching in notices were improper and subject to dismissal. The court found that intervention was proper because it would "reduce multiplicity of lawsuits by disposing of common questions of fact and law in one action" and would "avoid different results in the determination of essentially the same issues." *Also see Moldex, Inc. v. Ogden*

*Health Products,* 489 N.E.2d 130 (Ind.App. 1986) (vouchee sought to intervene but motion denied as untimely not as improper).

Intervenors under Rule 24(a)(2) assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted. *Dist. of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132 (D.C.Cir.1985). The intervenor cannot change the issues framed between the original parties, but he is entitled to litigate fully on the merits. 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1920 (1986). Accordingly, Crowntuft, once the court granted it intervention, was entitled to litigate the issue of the identity of the manufacturer of the robe.

In sum, we find no merit to Penney's arguments concerning the propriety of intervention by Crowntuft. Moreover, we find that Penney waived any objection to intervention by Crowntuft by not opposing Crowntuft's motion to intervene. The court shall proceed to consider the substance of Crowntuft's motion.

■ The record contains the following evidence concerning the manufacturer of the robe worn by the plaintiff on December 19, 1981. Prior to her depositions, plaintiff received the following interrogatories from Crowntuft and responded as follows:

> 5. Do you or your counsel have in your possession:
>
> a. the robe or any remnant of the robe?
>
> Answer: No.
>
> b. any record of its composition—fabric blend, weight, weave or structure?
>
> Answer: See 1981 J.C. Penney Catalog, robe—page 236, item B, polyester and cotton chenille.

Plaintiff also admitted the following in response to requests for admissions submitted by Penney:

> 2.R. That the robe was of the type and style pictured as item (b) on page 236 of the 1981 J.C. Penney Fall–Winter catalog.

2.S. That Margarita Sue Alvarado identified the robe as being the type and style of the robe pictured as item (b) on page 236 of the 1981 J.C. Penney Fall–Winter Catalog.

The robe shown as item (b) on page 236 of the J.C. Penney Fall/Winter Catalog is a pink chenille robe. This robe was 100% cotton with tufting that was a 50/50 polyester/cotton blend. It was manufactured by Crowntuft.

Plaintiff was deposed on two occasions during discovery, the first time on February 11, 1985, and the second time on June 11, 1986. During her depositions, plaintiff described the robe she was wearing as green decorated with pink flowers. She stated that she purchased the robe at the Penney's store in Emporia, Kansas on the day after she bought the nightgown there. She said the robe was the same length as her nightgown and it buttoned all the way to the ground. She described a tufted robe. She further said that she had never seen a picture of the robe she was wearing in any catalog.

Following plaintiff's depositions, Crowntuft indicated that the robe identified in the catalog was not available in green. Moreover, Crowntuft indicated that it did not manufacture or sell any bi-colored chenille robes prior to April 1983 and has never sold any green robes with pink flowers.

When Crowntuft filed its motion to dismiss or for summary judgment in 1986, plaintiff's counsel plainly acknowledged, in plaintiff's motion to dismiss Crowntuft, that discovery had not shown that Crowntuft manufactured the robe worn by plaintiff on December 19, 1981. Plaintiff's counsel admitted that plaintiff had identified the robe as containing two colors and that the record showed that Crowntuft had only supplied Penney with solid colored robes during the relevant time period. At oral argument on the instant motions, plaintiff's counsel reiterated that Crowntuft did not manufacture the robe in question.

Crowntuft contends that the record shows that any robe that might have been involved in the accident of December 19, 1981 was not and could not have been a product of Crowntuft. Penney takes the position that plaintiff's responses to the interrogatories and to the requests for admissions coupled with her deposition testimony create a material issue of fact precluding summary judgment to Crowntuft. In response, Crowntuft argues that Penney cannot use the interrogatory responses and the admissions to create a material issue of fact in light of plaintiff's deposition testimony.

 In considering the evidence before the court, we must conclude that the interrogatory answers and admissions do not create genuine issues of material fact so as to preclude the entry of summary judgment to Crowntuft. First, we do not believe that the interrogatory answers and admissions necessarily conflict with the plaintiff's deposition testimony. Prior to her deposition testimony, plaintiff indicated only that the robe she wore on December 19, 1981 was of the type and style as item (b) on page 236 of the 1981 J.C. Penney Fall/Winter Catalog. These statements do not mean, as suggested by Penney, that the robe pictured in the catalog is the robe she wore on the night of the fire. The subsequent specific testimony given by plaintiff at her deposition clearly indicates that the pictured robe is not the one she wore on December 19, 1981. Plaintiff continues to assert that the pictured robe is similar in type and style to the one she wore on December 19, 1981, but she also clearly indicates that that robe is not identical to the robe she had on. This evidence coupled with the evidence provided by Crowntuft allows the court to find, as a matter of law, that there is insufficient evidence in the record to establish that Crowntuft was the manufacturer of the robe plaintiff was wearing on the night of the fire. Second, even assuming that a conflict is presented by the interrogatory answers, the admissions and the deposition testimony, we do not find that it precludes the entry of summary judgment for Crowntuft. A district court has an obligation to exercise extreme care in determining whether a genuine issue of material fact

exists, but a party cannot be allowed to create such issues by presenting contradictory testimony. *Wilson v. Westinghouse Electric Corp.*, 838 F.2d 286, 289 (8th Cir.1988). Courts, including the Tenth Circuit, have held that summary judgment cannot be resisted through the use of a contrary affidavit given after a party provides clear answers to unambiguous questions in a deposition if the trial court concludes that the contrary affidavit constitutes an attempt to create a sham fact issue. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). *Also see Dilberti v. United States*, 817 F.2d 1259, 1263 (7th Cir.1987); *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984); *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657–58 (11th Cir.1984). The circumstances here suggest that Penney is attempting to use the interrogatory answers and admissions to create a sham fact issue. The testimony provided by plaintiff at her depositions is clear concerning the identification of the robe. Penney's suggestion that the interrogatory answers and admissions create a genuine issue of fact in light of the deposition testimony is absurd. Under these circumstances, we do not find that a genuine issue of material fact remains for trial. Accordingly, Crowntuft is entitled to summary judgment on the issue of whether it was the manufacturer of the robe.

### MILCO'S MOTION FOR SUMMARY JUDGMENT

Milco contends that it is entitled to summary judgment on any indemnification claims raised by Penney because there are no facts to support the allegation that the nightgown worn by plaintiff at the time of the accident was manufactured by Milco. Milco notes that the plaintiff has admitted that there is no evidence that Milco manufactured the nightgown worn by her when she was burned. In response, Penney makes essentially the same arguments that it made in response to Crowntuft's motion. Penney first asserts the same procedural

arguments concerning the propriety of Milco's motion. Penney next argues that there is a genuine issue of material fact as to whether Milco manufactured the nightgown in question.

The court will resolve Penney's procedural arguments in the same manner that its arguments concerning the Crowntuft motion were decided. The court finds that Milco was properly allowed to intervene and that the instant motion was properly filed. In addition, the court finds that Penney has waived any arguments concerning Milco's intervention by not objecting to intervention when it was sought. We shall now turn to the facts related to the issue of the identity of the manufacturer of the nightgown.

The record contains the following evidence concerning the manufacturer of the nightgown worn by the plaintiff on December 19, 1981. Plaintiff has indicated in her depositions and in answers to interrogatories that she was wearing a nightgown like the one pictured on page 227 of the 1981 J.C. Penney Fall/Winter Catalog. She has stated that she purchased the nightgown at the Penney's store in Emporia, Kansas. She described it as pink with flowers on the top and bow tie on the front of it. She further indicated that it had long sleeves, was floor length and was put on over the head. Plaintiff's expert witness conducted tests on gowns that were composed of 80% acetate and 20% nylon. He believed that the nightgown was composed of this fabric content because this blend level was almost exclusively used for sleepwear in the late 1970's and because a pink sample later obtained from the plaintiff's house in Emporia showed the presence of acetate. The nightgown pictured in the catalog was manufactured by Milco. However, that nightgown was only available through the catalog and was not available through retail stores. Plaintiff's counsel has admitted that there is no evidence that Milco manufactured the nightgown worn by the plaintiff on the night of the fire.

Penney contends that there is a genuine issue of material fact concerning the manufacturer of the nightgown because plaintiff

has indicated in interrogatory answers and admissions that the nightgown pictured in the catalog was of the type and style she wore on the night of the fire. Moreover, Penney points to plaintiff's deposition testimony where she stated (1) that there was nothing different between the gown she wore on December 19, 1981 and the one shown in the catalog, and (2) the material shown in the catalog looked like the same kind of material as the gown she wore on the night of the fire.

A careful review of the record reveals that Milco also is entitled to summary judgment on the issue of product identification. The evidence in the record is insufficient to preclude the entry of summary judgment for Milco. Based on the present record, we can rule, as a matter of law, that Milco did not manufacture the nightgown worn by the plaintiff on December 19, 1981.

## PENNEY'S MOTION FOR SUMMARY JUDGMENT

▇ Penney contends that if Crowntuft and Milco are granted summary judgment, then it should also be granted summary judgment. In support of this contention, Penney argues that in the event that the court finds that there is insufficient evidence of product identification to justify granting summary judgment in favor of the intervenors, then it is also entitled to summary judgment because plaintiff will not have identified specific products which caused her injuries.

At oral argument on this motion, Penney's counsel suggested that this is a case where plaintiff is attempting to make rabbit stew without a rabbit. Plaintiff's counsel has responded by arguing, in effect, that plaintiff has pulled the rabbit out of the hat.

In arguing that the plaintiff has not sufficiently identified the products that caused her injuries, Penney has not in its discussion of the law differentiated between the various theories of recovery asserted by plaintiff. We do not find it necessary to make this distinction either since the requirement of product identification is common to all of the claims brought by the

plaintiff. Nevertheless, we shall focus on plaintiff's strict liability claim since most of the caselaw on the issue of product identification has arisen in this area.

In Kansas, prior to the passage of the Kansas Products Liability Act, K.S.A. 60–3301 *et seq.*, all entities in the distributive chain, including suppliers, distributors, wholesalers and retailers, were liable for injuries resulting from a defective product. *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788, 794 (1980). In the KPLA, the legislature sought to limit the liability of the nonmanufacturer product seller. K.S.A. 60–3306. This court has already ruled that Penney is not entitled to summary judgment based on the application of K.S.A. 60–3306 because genuine issues of material fact remain concerning the application of the provisions of that statute. *Alvarado v. J.C. Penney Co., Inc.*, 713 F.Supp. 1379, 1393 (D.Kan.1989), *modified as to other issues*, 735 F.Supp. 371 (D.Kan. 1990). The issue raised by Penney's present motion is whether the plaintiff has provided sufficient evidence that it was the supplier of a defective product.

▇ In order to present a prima facie strict liability case, plaintiff must produce the following three elements of proof: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control. *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d 348, 360 (1983). These elements may be proven inferentially, by either direct or circumstantial evidence. *Id.*

The court has carefully examined the evidence in the record and we are convinced that plaintiff has produced sufficient evidence, direct and circumstantial, to avoid summary judgment on the issues of the identification of the nightgown and the robe. Plaintiff has indicated that she purchased the garments at the Penney's store in Emporia, Kansas, and she has provided a sufficient identification of the items. Plaintiff's expert witness has tested nightgowns and robes based on plaintiff's identification and concluded that the garments

were defective. The court understands the arguments made by Penney, but we believe that a genuine issue of material fact remains on the issue of the identification of the nightgown and robe. In reaching this conclusion, we have examined a number of product identification cases including *Morgan v. Sears, Roebuck & Co.*, 700 F.Supp. 1574, 1576–78 (N.D.Ga.1988) (genuine issue of material fact exists concerning identification of nightgown alleged to be unreasonably flammable based on conflicting evidence even though identified nightgown is cotton and hospital records indicate nightgown was nylon); *Brown v. Stone Manufacturing Co., Inc.*, 660 F.Supp. 454, 456–58 (S.D.Miss.1986) (evidence insufficient to identify manufacturer of nightgown alleged to be unreasonably dangerous); *Mason v. Spiegel, Inc.*, 610 F.Supp. 401, 406 n. 7 (D.Minn.1985) (identification of Spiegel as seller of tennis dress alleged to be unreasonably flammable was sufficient even though plaintiff has no documents proving purchase or any portion of the dress and manufacturer of dress cannot be established); *Drayton v. Jiffee Chemical Corp.*, 395 F.Supp. 1081, 1086–87 (N.D.Ohio 1975) (liquid drain cleaner sufficiently identified even though evidence suggested that different drain cleaner might have been involved), *aff'd on issue of product identification*, 591 F.2d 352, 356 (6th Cir.1978); *Kramer v. Weedhopper of Utah, Inc.*, 141 Ill.App.3d 217, 95 Ill.Dec. 631, 634–35, 490 N.E.2d 104, 107–08 (Ill.App.Ct.1986) (genuine issue of material fact exists concerning whether supplier provided allegedly defective bolts where evidence showed only that supplier provided 90% of bolts used); *Trahan v. Morrison Assurance Co., Inc.*, 398 So.2d 146, 148 (La.App.Ct.1981) (genuine issue of material fact exists where plaintiff testifies he purchased lighter from certain store in 1976 and store presents evidence that such lighters were not sold at store prior to 1980); and *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954, 955–56 (1978) (evidence that defective snowmobile had decal which read "Ariens" was alone sufficient to identify defendant as manufacturer). *Also see* Annot., Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to have Caused Injury, 51 A.L.R.3d 1344 (1973). In sum, we do not find that Penney is entitled to summary judgment on the issue of product identification. Plaintiff has sufficiently identified the "rabbit" so that she can avoid summary judgment and make "rabbit stew."

 Penney has also asked for partial summary judgment concerning plaintiff's claims based on the flammability of the robe. Penney argues that it is entitled to summary judgment on these claims because the uncontroverted evidence indicates that the robe did not burn on the night plaintiff was burned. Penney points to plaintiff's deposition testimony in which she says on a number of occasions that the robe did not burn that night. Penney further points to other testimony given by plaintiff during her deposition in which she indicates that, following the accident, the robe was brought to the hospital by her aunt.

Plaintiff contends that a genuine issue of material fact exists on this issue based on several reasons. First, she points to her answer given in an interrogatory that the robe did burn on the night of the fire. Second, at oral argument, counsel for the plaintiff indicated that plaintiff was confused during her deposition. Finally, plaintiff points to the testimony of her expert witness who has testified that he believes that the robe did burn because of (1) plaintiff's description of the fire igniting in the back; (2) the volume of smoke observed by a neighbor; and (3) the burn patterns on plaintiff's body.

The court finds that the testimony of the expert witness creates a genuine issue of material fact on this issue. The opinion of the expert witness is sufficient to avoid summary judgment despite plaintiff's rather emphatic testimony in her deposition. The resolution of this issue must be left for the jury.

With the resolution of these motions, the court shall immediately set this case for trial since the final pretrial order has been prepared. This action is hereby set for

trial on August 19, 1991 to begin at 9:30 a.m.

IT IS THEREFORE ORDERED that the motion to dismiss or for summary judgment filed by Crowntuft Manufacturing Corporation, Inc. (Doc. #175) by hereby granted. Judgment shall be entered for Crowntuft and against the remaining parties.

IT IS FURTHER ORDERED that the motion for summary judgment filed by Milco Industries, Inc. (Doc. #296) be hereby granted. Judgment shall be entered for Milco and against the remaining parties.

IT IS FURTHER ORDERED that the motion for summary judgment filed by defendant J.C. Penney Company, Inc. (Doc. #309) be hereby denied.

IT IS FURTHER ORDERED that the trial of this action shall begin on August 19, 1991 at 9:30 a.m.

IT IS SO ORDERED.